IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| Veronika Babayan, | ) CIVIL ACTION NO. 2:13-2421-PMD-BM |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| | ) |
| Delfin Group USA LLC, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

This action has been filed by the Plaintiff asserting civil rights claims against the

Defendant Delfin Group USA, LLC.  This case is one of nine (9) separate cases filed against this

same Defendant, all of which have been assigned to the undersigned United States Magistrate Judge.

The Defendant has filed a motion to dismiss Plaintiff's Amended Complaint on the

grounds that Plaintiff has failed to set forth sufficient factual matter to state any plausible claim for

relief.  Plaintiff has filed a memorandum in opposition to the Defendant's motion, to which the

Defendant has filed a reply.  Defendant's motion is now before the Court for disposition.[1]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for
all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local
Rule 73.02(B)(2)(d), D.S.C.  The Defendant has filed a motion to dismiss.  As this is a dispositive
motion, this Report and Recommendation is entered for review by the Court.



### Allegations of the Amended Complaint

Plaintiff, a former employee in the HR Department of the Defendant, alleges that she is of Armenian nationality, and asserts federal claims in her Amended Complaint pursuant to Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981, as well as a state law contract claim.  Plaintiff alleges that on or about May 2010, she and the Defendant "entered into a contract" whereby the Defendant employed her to work for a "an indefinite term".  Plaintiff alleges that she worked in the Defendant's human resources department, and was "efficient and effective in her work".  Plaintiff further alleges that the Defendant had a handbook (attached to the Amended Complaint as Exhibit A) that "created a contract" between Plaintiff and the Defendant.  Plaintiff specifically alleges that the handbook "uses mandatory language creating a contractual agreement between the Plaintiff and the Defendant for employment", and did not contain a disclaimer that met the requirements of S.C. Code Ann. § 41-1-110.  Plaintiff then goes on to set forth specific language from the handbook wherein Defendant states that all employment decisions will be based on job related merit without regard to race or national origin, that harassment based on any prohibited conduct is also prohibited, and that any violation of this policy "will be subject to disciplinary action resulting in immediate termination of  employment".

Plaintiff further alleges that the handbook has "mandatory language" setting forth various work rules and prohibitions, and quotes language from the handbook setting forth rules with regard to clothing, absences, solicitations, doctor visits, comp time, use of company property and equipment, and use of company software and computer equipment.  Finally, Plaintiff quotes language from the handbook which provides that the Defendant "will not tolerate retaliation against



any employee for making a complaint" regarding prohibited conduct. Plaintiff alleges that the "contract indicated she would be paid for working", and that she "performed her contractual obligations and despite the fact she was discriminated against".

Plaintiff also alleges that during her time of employment with the Defendant, it was reported to her "that the new President for the Defendant, John Gordon, had been making racial slurs about Armenians to other employees". Plaintiff further alleges that Robin Orojuian, an employee of the Defendant, told her that Gordon had been making racial slurs to him, and that he wanted to file a discrimination complaint. Plaintiff alleges that when she was approached with a complaint, she documented the complaint as required by the Defendant's policies and Title VII. Plaintiff further alleges that, as required by her job, she presented the complaints of racial discrimination to the Defendant's President, John Gordon, an activity protected by Title VII. Plaintiff alleges that Gordon in turn yelled at her for documenting the complaint, and informed her that she should have "covered up" the allegations of racial discrimination. Plaintiff alleges that Gordon then proceeded to yell at the Plaintiff, belittling her and making racial remarks.

Plaintiff alleges that thereafter Gordon proceeded to begin undermine her position with the company and that he would complete various tasks that were supposed to be completed by the Plaintiff without her knowledge. Plaintiff alleges that Gordon created a hostile work environment for her because she refused to cover up the allegation of racial discrimination, berating and belittling her on a daily basis in retaliation for her performing her job, and that since Mr. Gordon was the Defendant's President and the "alter ego" of the Defendant, there was no one to whom to report his discriminatory conduct. Plaintiff alleges that the Defendant then wrongfully terminated



her on or about September 14, 2012 in retaliation for having engaged in protected activity and her complaints of discrimination regarding the Defendant's President, John Gordon.

In her **First Cause of Action**, Plaintiff alleges that she was retaliated against and terminated based on her nationality, race and color in violation of Title VII of the Civil Rights Act. Plaintiff also alleges that she was subjected to a hostile work environment in violation of Title VII. Plaintiff alleges that she engaged in protected activity by attempting to investigate complaints of discrimination as required by Title VII, that as a result the Defendant's President, Jeff Gordon, retaliated against her by harassing her on almost a daily basis, that Plaintiff indicated to Gordon that she did not appreciate the way he was treating her which was severe and pervasive and created a hostile work environment, that Gordon's retaliation was constant and pervasive on a daily basis until she was terminated, that the Defendant through its agents and employees demonstrated a pattern of discriminatory treatment towards Armenians by making disparaging remarks, reassigning Armenians to menial tasks, and laying them off in disproportionate numbers compared to employees who where not in this protected class, and that her attempt to investigate and report Gordon for discrimination was the reason for her adverse employment action.

In her **Second Cause of Action**, Plaintiff alleges that she was retaliated against and terminated based on her nationality, race and color in violation of 42 U.S.C. § 1981. Plaintiff also asserts a claim under § 1981 against the Defendant for "allowing a hostile work environment to exist regarding racial discrimination in the work place".

In her **Third Cause of Action**, Plaintiff asserts a state law claim for breach of contract. Plaintiff alleges that she was efficient and effective in her work, and that the Defendant



breached her contract of employment by discriminating against her due to her nationality, race, and color.

Plaintiff seeks monetary damages, to include reinstatement of benefits and front pay. See generally, Amended Complaint.

## Discussion

When considering a Rule 12 motion to dismiss, the Court is required to accept the allegations in the pleading as true, and draw all reasonable factual inferences in favor of the Plaintiff. The motion can be granted only if the Plaintiff has failed to set forth sufficient factual matters in the Complaint to state a plausible claim for relief "on its face". Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "[O]n a motion to dismiss, the Court does not weigh the strength of the evidence, and simply considers whether the complaint alleges sufficient facts which, if true, would permit a reasonable fact finder to find defendants liable." Vogt v. Greenmarine Holding, LLC, 318 F.Supp. 2d 136, 144 (S.D.N.Y. 2004). For the reasons set forth hereinbelow, the Defendant's motion should be **granted**, in part, and **denied**, in part.

**Exhaustion**. Plaintiff alleges three separate claims under both Title VII and § 1981 in her first two Causes of Action: retaliation, hostile work environment, and disparate treatment.[2]

---

[2]Although these are three separate legal claims; see generally Shetty v. Hampton University, No. 12-58, 2014 WL 280448 at * 5 (E.D.Va. Jan. 24, 2014) [Claim for disparate treatment based on national origin is a separate and distinct claim from a hostile work environment claim]; Murphy v. Suffolk County Community College, No. 10-251, 2011 WL 5976082 at * 7 (E.D.N.Y. Nov. 29, 2011) [Finding that Plaintiff's disparate treatment claim, hostile work environment claim, and retaliation claim are all distinct claims that should be alleged in separate counts]; as noted Plaintiff has asserted all three in each of her First and Second Causes of Action. Since these are separate claims, Plaintiff should have asserted each in a separate cause of action; however, her failure to do so is not in and of (continued...)



To proceed with these claims under Title VII, Plaintiff must first have first exhausted her administrative remedies; Smith v. First Union Nat'l. Bank, 202 F.3d 234, 247 (4th Cir. 2000)["Before filing suit under Title VII, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC [or SCHAC]"]; and Defendant asserts in its motion that Plaintiff's Title VII Cause of Action should be dismissed for failure of the Plaintiff to plead satisfaction of all conditions precedent necessary to filing suit.[3]  However, Plaintiff specifically alleges that she filed a charge of discrimination with the South Carolina Human Affairs Commission (SCHAC) and the Equal Employment Opportunity Commission (EEOC), that she received her right to sue letter on or about June 26, 2013, and thereafter timely filed her Complaint. Amended Complaint, ¶ 2.  Plaintiff also specifically alleges that the Defendant meets the definition of an "employer" under Title VII. Id., ¶¶ 6-8.  This argument for dismissal of Plaintiff's Title VII Cause of Action is therefore without merit.[4]

---

[2](...continued)
itself grounds to dismiss one or all of these claims at this time.  See Austen v. Catterton Partners V, LP, 709 F.Supp.2d 172 (D.Conn. 2010)[Plaintiff only required to provide adequate notice to the defendant of the basis for the lawsuit and to make a claim plausible]; Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009)[requirement is that Plaintiff's allegations provide sufficient notice to defendants of the plaintiff's claim].

[3]There is no administrative exhaustion requirement for a § 1981 claim.  Caetio v. Spirit Coach, LLC, 992 F.Supp.2d 1199, 1209 (N.D.Ala. 2014) ["There are no administrative prerequisites to the maintenance of a § 1981 claim."].

[4]It should also be noted that, while Plaintiff cites Title VII and § 1981 as being the jurisdictional basis for her federal claims; see Amended Complaint, ¶¶ 1 and 2; she also at various points and times in the Amended Complaint references 42 U.S.C. ¶ 1983 and the "Equal Employment Opportunity Act", although she does not appear to assert any specific claims under these statutes. In any event, it appears that any "Equal Employment Opportunity Act" claim would be subsumed by, and be part and parcel of, her Title VII claim, while Plaintiff cannot maintain a claim against this
(continued...)

6



**Disparate Treatment Claim**.  Plaintiff's disparate treatment claim is based on her allegation that she was subjected to racial and/or national origin discrimination when she was treated disparately by the Defendant based on these characteristics.  Title VII makes it unlawful "to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin . . ." 42 U.S.C. 2000e-2.  To pursue this claim under § 1981, Plaintiff must prove that the Defendant "intended to discriminate [against the Plaintiff] on the basis of [her] race, and that the discrimination interfered with a contractual interest."[5]  Denny v. Elizabeth Arden Salons, Inc., 456 F.3d 427, 434 (4th Cir. 2006).[6]

---

[4](...continued)
Defendant under § 1983 because the Defendant is not a public actor.  Brown v. Newberger, 291 F.3d 89, 93 (1st Cir. 2002) [Private actors not subject to liability under § 1983].  Therefore, to the extent Plaintiff has intended to assert claims for relief under either of these two statutes, any such claims should be dismissed.

     Plaintiff also references the South Carolina Human Affairs Law (SCHAL) at various points in her Complaint, which would be a claim under state law.  However, as was the case with Plaintiff's references to § 1983 and the "Equal Employment Opportunity Act", Plaintiff never discusses her discrimination claims separately under a SCHAL analysis.  While the analytical framework for considering Plaintiff's claims under SCHAL would be the same as that for her Title VII claim; see Orr v. Clyburn, 290 S.E.2d 804, 806 (S.C.1982); Tyndall v. National Education Centers, 31 F.3d 209 (4th Cir.1994); S.C.Code Ann. & 1-13-10 et al (2003); cf. Cromer v. Greenwood Com'n of Public Works, No. 92-CP-24-392, 1993 WL 328182, *4 (S.C.Com.Pl. Feb. 3, 1993)[The court notes that its ruling accords with the interpretation of federal employment discrimination laws upon which our state employment discrimination laws are modeled.]; Robinson v. BGM America, Inc., ___ F.Supp. 2d ___, 2013 WL 4042187 at * 22 (D.S.C. Aug. 8, 2013); SCHAL does have a different timetable for exhaustion of remedies prior to filing of a lawsuit.  See S.C.Code Ann. § 1-13-90(d)(6).  Plaintiff's Amended Complaint does not contain any allegations relating to the exhaustion of her administrative remedies under SCHAL, and therefore to the extent Plaintiff is attempting to assert her claims under SCHAL, that statute should also be dismissed as an avenue for relief in the Complaint.

     [5]While Plaintiff asserts that she had an employment contract with the Defendant, even if she did not; see, discussion, infra; that would not defeat her § 1981 claim.  See Sellers v. South Carolina Autism Soc., Inc., 866 F.Supp. 2d 692, 695-698 (D.S.C. 2012) [Concluding that "at-will employment (continued...)



In order to survive Defendant's motion to dismiss and proceed with these claims, Plaintiff's Amended Complaint must set forth sufficient factual matters to state a plausible claim for intentional discrimination based on her race and/or national origin. This claim may be proved either by direct evidence or by the structured procedures set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[7] Under the framework established by the Supreme Court in McDonnell Douglas, Plaintiff can meet this standard (at least for purposes of a motion to dismiss) through allegations sufficient to reasonably infer a prima facie case of discrimination;[8] i.e., by showing that

---

[5](...continued)
in South Carolina is contractual in nature and may support a claim under Section 1981."].

[6]Section 1981 is not applicable to "national origin" claims. See Lee v. Sony BMG Music Entertainment, Inc., 557 F.Supp.2d 418, 424 (S.D.N.Y. 2008)["[N]ational origin-based discrimination claim brought under section 1981 [ ] dismissed with prejudice, because that statute does not cover national origin."]. Plaintiff's identification of herself as an "Armenian", however, is sufficient for purposes of a Rule 12 Motion to Dismiss to allow her § 1981 claim to proceed. See Fonseca v. Sysco Food Sevs. of Arizona, Inc., 374 F.3d 840 (9th Cir. 2004)[While national origin discrimination is not within ambit of § 1981, race has been defined broadly to cover immigrant ethnic groups.]; see also Topadzhilchan v. Glendale Police Dept., No. 10-387, 2010 WL 2740163, at * 5 (C.D.Cal. July 8, 2010) [Finding that Plaintiffs, as Armenian-Americans, were members of an ethnic minority for purposes of a § 1981 discrimination claim.].

[7]Although McDonnell Douglas is a Title VII case, the standards applicable to lawsuits under § 1981 are basically the same as the standards applicable to lawsuits under Title VII, with the same caselaw being used to evaluate a claim under either statute. See Ross v. Kansas City Power & Light Co., 293 F.3d 1041, 1050 (8th Cir. 2002)["In analyzing a claim . . . under section 1981, we apply the same standards as in a similar Title VII claim."]; Long v. First Union Corp. of Virginia, 894 F.Supp. 933, 945 (E.D.Va. 1995); Kim v. Nash Finch Co., 123 F.3d 1046, 1063 (8th Cir. 1997). Therefore, the analysis set forth herein with respect to Plaintiff's claims under Title VII also applies to any claims Plaintiff has asserted under § 1981.

[8]See Gladden v. Solis, No. 11-3120, 2012 WL 3009275 (3rd Cir. July 24, 2012)[To survive a motion to dismiss, Plaintiff need only set forth allegations that raise a "reasonable expectation" that discovery will reveal evidence of necessary elements of the prima facie case]; Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); see also Johnson v. Scotts Co., No. 11-20, 2011 WL
(continued...)



1) she is a member of a protected class; 2) she was qualified for the job at issue; 3) she was subjected to an adverse employment action; and 4) that the position was filled ( in the case of termination) by someone who is not a member of her protected class, or there is some other evidence sufficient to give rise to an inference of unlawful discrimination. See generally, Austen v. HCA Health Services of Virginia, Inc., No. 00-2359, 2001 WL 242203 at **1 (4th Cir. Mar. 12, 2001); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995), cert. denied, 516 U.S. 870 (1995). See Gilbert v. Penn-Wheeling Closure Corp., 917 F.Supp. 1119 (N.D.W.Va. 1996); see also Ennis v. National Ass'n of Business and Educational Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995)[The exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged].

Plaintiff has alleged in her Amended Complaint that she is a member of a protected class (Armenian by race and nationality), that she was qualified for her job and performing her job duties well, and that she was subjected to an adverse employment action when she was terminated. However, Plaintiff has failed to set forth any factual allegations in her Amended Complaint to establish the fourth prong of her prima facie case; i.e., to show that the Defendant discriminated against her or terminated her because of her race and/or her national origin,[9] such as to establish a plausible claim for relief for this claim. Rather, Plaintiff's allegations are that reports were made to

---

[8](...continued)
6415521 at * 2 (S.D.Ohio Dec. 21, 2011)["To survive Defendant's motion to dismiss, [plaintiff] need only establish a prima facie case of discrimination."] (citing Cox v. Shelby State Comty. College, 48 Fed. Appx. 500, 506 (6th Cir. 2002).

[9]There is also no allegation that she was replaced by someone from outside of her protected class.



her in her capacity as an HR employee that Gordon was discriminating against *other employees* on the basis of race, and that when she informed Gordon of these complaints, Gordon told her that she should have "covered up" the allegations of racial discrimination and then started to treat her badly, ultimately terminating her from her job, in retaliation for her reporting these complaints of discrimination. That is a retaliation claim - not a disparate treatment claim. Cf. <u>Miller v. City of Ithaca</u>, No. 10-597, 2010 WL 3809842 at * 6 (N.D.N.Y. Sept. 22, 2010) [Noting that facts set out retaliation allegations, not race-based discrimination].

While Plaintiff does allege that Gordon generally had a discriminatory animus towards Armenians, and that "[b]ut for the Plaintiff's nationality, race and color, she wouldn't have been terminated"; <u>Amended Complaint</u>, ¶ ¶ 45, 50, 52, 59, 66-67; these are mere conclusory claims which are not supported by any factual allegations to establish that Plaintiff was terminated because she is Armenian. See <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)[While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, factual allegations must be enough to raise a right to relief above the speculative level]; <u>Johnson v. Bank of America</u>, No. 09-1600, 2010 WL 1542560, at * 2 (D.S.C. April 16, 2010)["Mere legal conclusions [are] not entitled to a presumption of truth"]; <u>Carpenter v. County School Board</u>, 107 F.Appx. 351, at ** 1 (4th Cir. 2004) [Finding plaintiff's discrimination claim to be subject to dismissal where she did "nothing more than state that she was in a protected class and that she suffered adverse employment decision"]; <u>Johnson v. Holder</u>, No. 11-2650, 2012 WL 4587355, * 1 (D.S.C. Sept. 28, 2012) ["More than labels and conclusions [are required], and a formulaic recitation of the elements of a cause of action will not do"] (quoting <u>Twombly</u>, 550 U.S. at 555), <u>adopted by</u>, 2013 WL 314753 (D.S.C. Jan. 28, 2013); <u>Griffith v. State Farm Fire & Casualty Co.</u>, No. 12-239,



2012 WL 2048200, at * 1 (D.S.C. June 6, 2012).

Therefore, Plaintiff's disparate treatment claims in both her First and Second Causes of Action should be dismissed. Harper v. United States, 423 F.Supp. 192, 196 (D.S.C. 1976)["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"]; Frey v. City of Herculaneum, 44 F.3d at 671 ["Complaint must contain facts which state a claim as a matter of law and must not be conclusory"]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Conclusory allegations insufficient to maintain claim]; see also Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002)[Plaintiff has burden of alleging facts sufficient to state all the elements of a claim].

**Retaliation Claim**. With respect to Plaintiff's claim of retaliation, in order to survive the Defendant's motion to dismiss her retaliation claim, Plaintiff's allegations must be sufficient to reasonably infer a prima facie case of retaliation;[10] i.e., by showing that 1) she engaged in activity protected under Title VII and § 1981[11]; 2) the Defendant took an adverse employment action against her; and 3) a causal connection exists between the protected activity and the adverse action. Lettieri v. Equest, Inc., 478 F.3d 640, 650 (4th Cir. 2007); Williams v. Cerberronics, Inc., 871 F.2d 452, 457 (4th Cir. 1989); Munday v. Waste Management of North America, Inc., 127 F.3d 239, 242 (4th Cir. 1997); see Ennis, 53 F.3d at 58 [The exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged].

---

[10]See also, Note 8, supra.

[11]Section "1981 . . . prohibits not only racial discrimination but also retaliation against those who oppose it." University of Texas Southwestern Medical Center v. Nasser, 133 S.Ct. 2517, 2529 (2013) (citing CBOCS West Inc. V. Humphries, 553 U.S. 442, 445 (2008).



Here, the Defendant asserts that Plaintiff has failed to set forth any factual allegations showing that she participated in any protected activity. Cf. Rodas v. Town of Farmington, 918 F.Supp.2d 183, 189 (W.D.N.Y. Jan. 16, 2013)["'Protected activity' includes opposing employment practices that are prohibited under Title VII (such as discrimination based on race, color, religion, sex, or national origin), or making a charge of discrimination, or participating in any investigation, proceeding, or hearing arising under Title VII."]. Rather, Defendant argues that Plaintiff has merely alleged, at most, that Gordon retaliated against her for doing her job; i.e., for reporting and processing a complaint of discrimination that had been made by an employee of the Company, which is not "protected activity" for purposes of a Title VII or § 1981 claim. Cf. Rice v. The Spinx Co., Inc., No. 10-1622, 2012 WL 684019, at * 4-5 (D.S.C. Mar. 2, 2012) [Noting that "courts regularly hold that actions within the scope of an employee's duties are not protected for the purpose of Title VII"]; see also Vidal v. Ramallo Bros. Printing, Inc., 380 F.Supp.2d 60, 62 (D.P.R. 2005) [Human resources director did not engage in protected activity when he informed the company's president and vice-president that he was initiating a sexual harassment investigation against them]. Plaintiff argues, however, that her claim that she was terminated in retaliation for refusing to cover up the allegations of racial discrimination by Gordon, the President of the company, is sufficient to state a plausible claim of retaliation. Cf. Gilday v. Kenra, Ltd., No. 09-229, 2011 WL 836989, at * 11 (S.D.Ind. Mar. 4, 2011) [Finding that retaliation claim could proceed where the nature of activities engaged in by the human resources director in pursuing a claim of discrimination "went beyond her duties and responsibilities as the Human Resources Director" so as to qualify as "protected activity"].

After considering the arguments of counsel, accepting the allegations in the pleading as true, and drawing all reasonable factual inferences from those allegations in favor of the Plaintiff,

12



the undersigned concludes that, at least at this point in the proceedings, Plaintiff's retaliation claim should be allowed to proceed. See Austen, 709 F.Supp.2d at 172 [Iqbal's plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]]; Gladden, 2012 WL 3009224 [To survive a motion to dismiss, Plaintiff need only set forth allegations that raise a "reasonable expectation" that discovery will reveal evidence of necessary elements of the prima facie case]. Plaintiff alleges in her in her Amended Complaint that it was reported to her by employee Robin Orojuian that Gordon had been making racial slurs to him because he was an Armenian, that it had been reported to her that Gordon had been making slurs about Armenians to other employees, and that Orojuian wanted to file a discrimination complaint. Plaintiff further alleges that, as required by her job, she documented this complaint of discrimination and informed Gordon, who in addition to being the party complained about, was also the Defendant's President. Plaintiff alleges that Gordon yelled at her for documenting the complaint and told her that she should have "covered up" the allegations of discrimination, and that when she continued to pursue the matter Gordon retaliated against her by yelling at her, belittling her, making racial remarks and ultimately firing her.

Liberally construed, these allegations are sufficient to state a claim that Plaintiff "stepped outside of her role as human resources manager and went a step further than her job required" by continuing to pursue Orojuian's discrimination complaint, even though the President of the company had told her not to, to survive a Rule 12 motion to dismiss. Cf. Gilday, 2011 WL 836989, at * 11 [Noting HR manager can step "outside her role" by continuing to pursue investigation "up the corporate tree" even though initially rebuffed]; see also Slade v. Hampton Roads Regional Jail, 407 F.3d 243, 248 (4th Cir. 2005)["Courts should not dismiss a complaint for



failure to state a claim unless 'after accepting all well-pleaded allegations in the Plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief'"], citing Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999); Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002)["[W]hen [dismissal for failure to state a claim] involves a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged'"], citing Harrison v. United Postal Service, 840 F.2d 1149, 1152 (4th Cir. 1988); see also Vogt, 318 F.Supp.2d at 146 [Finding that Plaintiffs had asserted sufficient facts to allege improper conduct by the named defendants, and that "[w]hether plaintiffs will be able to demonstrate the truth of those facts after discovery is an entirely different question, but plaintiffs are entitled to make the attempt"].

Therefore, the Defendant is not entitled to dismissal of Plaintiff's retaliation claim as set forth in her First and Second Causes of Action at this time.  See Austen, 709 F.Supp.2d at 172 [Iqbal's plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]]; and, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely"];  citing Twombly, 550 U.S. at 556 (internal quotation marks and citations omitted).

**Hostile Work Environment Claim**.  To avoid dismissal of her hostile work environment claim, Plaintiff's Amended Complaint must have factual allegations sufficient to state a plausible claim that 1) she was subjected to unwelcome conduct in a work related setting; 2) the

14



conduct complained of was in retaliation for protected conduct;[12] 3) the conduct was sufficiently severe or pervasive to alter her condition of employment and to create an abusive work environment; and 4) the conduct was imputable on some factual basis to her employer.  EEOC v. Cent. Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009); Ocheltree v. Scollon Productions, Inc., 308 F.3d 351, 356 (4th Cir. 2002), rehearing en banc, 335 F.3d 325 (4th Cir. 2003), cert. denied, 124 S.Ct. 1406 (2004); Spicer v. Com.of Va. Dep't of Corrections, 66 F.3d 705, 710 (4th Cir. 1995); Brown v. Perry, 184 F.3d 388, 393 (4th Cir. 1999); Scott v. Health Net Federal Services, LLC, No. 11-1947, 2012 WL 340216 at * 2 (4th Cir. Feb. 3, 2012).

Defendant argues that the allegations of Plaintiff's Amended Complaint fail to meet the standards for a hostile work environment claim because Plaintiff only asserts "some unspecified and vague comments by Delfin's President were 'severe and pervasive'", thereby allegedly creating a hostile work environment.  Defendant contends that these allegations are mere "legal conclusions and not entitled to the assumption of truth".  Defendant's Brief, p. 10, n. 6.  The undersigned is constrained to agree.  Plaintiff has failed to set forth any *factual* allegations (as opposed to *conclusory* allegations) sufficient to give rise to a plausible claim that she was subjected to harassment severe and pervasive enough to effect a term, condition, or privilege of employment.

---

[12]While there is a split in authority as to whether a hostile work environment claim can be based on retaliation; cf. Kline v. Utah Anti-Discrimination and Labor Div., 418 Fed.Appx. 774, 781, n. 2 (10th Cir. 2011) [Noting this theory of relief had not been recognized by the 10th Circuit at that time]; Cleveland v. Southern Disposal Waste Connections, 491 Fed.Appx. 698, 707 (6th Cir. 2012) [Theory recognized in Sixth Circuit]; see also Gowski v. Peake, 682 F.3d 1299, 1312 (11th Cir. 2012); this claim for relief has been recognized in the Fourth Circuit, which is binding authority on this Court.  See Wells v. Gates, 336 Fed. Appx. 378, 387 (4th Cir. 2009) [Noting standard for Title VII hostile work environment claim based on retaliation]; Van Gunten v. Maryland, 243 F.3d 858, 869-870 (4th Cir. 2001).

15



Rather, Plaintiff only alleges that after she told Gordon she was filing Orojuian's discrimination complaint, that Gordon yelled at her for documenting the complaint, told her she should have "covered up" the allegations of racial discrimination, and then proceeded to "belittle" Plaintiff and make racial remarks.  This conduct by Gordon after being told by Plaintiff that she was going to file Orojuian's complaint is not sufficient to set forth a plausible hostile work environmental claim. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 768 (1998) (quoting Snell v. Suffolk City, 782 F.2d 1094, 1103 (2d Cir. 1986) ["To establish a hostile atmosphere, . . . . Plaintiffs must prove more than a few isolated incidents of [inappropriate conduct."]] (Thomas, dissenting); Hall v. Interstate Brands Corp., 395 Fed.Appx. 519, 523 (10th Cir. 2010)[Dismissing claim of hostile work environment where Plaintiff only alleged limited, isolated incidents of inappropriate conduct].

While Plaintiff does further allege that, because she refused to cover up Orojuian's allegations of racial discrimination, Gordon "berated and belittled her on a daily basis" and undermined her position by "complete[ing] various tasks that were supposed to be completed by the Plaintiff", these are again mere conclusory allegations - Plaintiff has set forth no specific factual allegations as to exactly what Gordon actually did or was supposed to have done.  Cf. Robertson v. Dodaro, 767 F.Supp. 2d 185, 200 (D.D.C. 2011) [Plaintiff failed to establish hostile work environment claim where her assertion was that "work became emotionally draining, interaction with supervisors became stressful and combative, and efforts were consistently made to demean and belittle the Plaintiff and deride her work product"] [internal citations omitted].  Finally, although Plaintiff also alleges that she was terminated , that discreet act does not save her hostile work environment claim where she has otherwise failed to allege sufficiently severe and pervasive conduct to give rise to a plausible claim for relief under the applicable standards for a hostile work



environment claim. Baird v. Gotbaum, 662 F.3d 1246, 1252 (D.C.Cir. 2011) ["]A] Plaintiff may not combine discrete acts to form a hostile work environment claim without meeting the required hostile work environment standard"]; Kelly v. Dun & Bradstreet, Inc., 557 Fed.Appx. 896, 900 (11th Cir. 2014)"[D]iscrete acts, such as termination . . ., cannot alone form the basis of a hostile work environment claim"]; Slate v. Public Defender Service for the District of Columbia, ____ F.Supp.2d ___, 2014 WL 1315238 at * 18, n. 14 (D.D.C. 2014); Hampton v. Vilsack, 760 F.Supp.2d 38, 56–57 (D.D.C. 2011) ["Plaintiff cannot . . . rely on the discrete acts upon which he bases his discrimination and retaliation claims to support a hostile environment claim."] (citing Franklin v. Potter, 600 F.Supp.2d 38, 76 (D.D.C.2009) ["Because plaintiff's allegedly hostile events are the very employment actions he claims are retaliatory, he cannot so easily bootstrap alleged retaliatory incidents into a broader hostile work environment claim.") (internal quotation marks and citations omitted)]; Wade v. District of Columbia, 780 F.Supp.2d 1, 19 (D.D.C.2011) [rejecting plaintiff's effort to transform amalgamation of disparate treatment claims into cause of action for hostile work environment for lack of connection in pervasive pattern of severe harassment] (citing Lester v. Natsios, 290 F.Supp.2d 11, 33 (D.D.C. 2003) ["Discrete acts constituting discrimination or retaliation claims ... are different in kind from a hostile work environment claim that must be based on severe and pervasive discriminatory intimidation or insult."])].

Hence, while the undersigned has concluded that Plaintiff's allegations are sufficient, at least at this stage of the proceedings, to state a plausible claim for retaliation; see discussion, supra; they do not meet the requirements to establish the third prong of her hostile work environment claim. Harper, 423 F.Supp. at 196 ["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"]; Iqbal, 129

17



S.Ct. at 1949 [Claim subject to dismissal where Plaintiff fails to set forth sufficient factual matters to state a plausible claim for relief "on its face"]; House, 824 F.Supp. at 485 [Conclusory allegations insufficient to maintain claim]; Dickson, 309 F.3d at 213 [Plaintiff has burden of alleging facts sufficient to state all the elements of a claim]. Therefore, the Defendant is entitled to dismissal of Plaintiff's hostile work environment claim set forth in her First and Second Causes of Action.

**Breach of Contract Claim**. In her Third and final Cause of Action, Plaintiff asserts a state law claim for breach of contract. Defendant asserts that this claim is subject to dismissal because Plaintiff has failed to set forth factual allegations sufficient to give rise to a plausible claim that she had an employment contract with the Defendant.

The necessary elements of a contract are an offer, acceptance, and valuable consideration. Roberts v. Gaskins, 486 S.E.2d 771, 773 (S.C. 1997), citing Carolina Amusement Co., Inc. v. Connecticut Nat'l Life Ins., Co., 437 S.E.2d 122 (S.C. Ct. App. 1993). With respect to employment, however, there is a presumption in South Carolina that employees are at-will, and therefore in order to survive a Rule 12 Motion to Dismiss on a claim for breach of a contract of employment, a Plaintiff must "plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship . . . .". Perrine v. G4S Solutions (USA), Inc., No. 11-1210, 2011 WL 3563110, at * 2 (D.S.C. Aug. 9, 2011)["[T]here is a presumption in South Carolina that employees are at-will, and in order to survive a Rule 12 motion to dismiss on a claim for breach of a contract of employment, a Plaintiff must 'plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship . . . .'"], quoting Amason v. P. K. Management, LLC, No. 10-1752, 2011 WL 1100169, at * 6 (D.S.C. Mar. 23, 2011); see also Prescott v. Farmer's Tel. Co-Op., Inc., 516 S.E.2d 923, 927, n. 8 (S.C. 1999)[In South



Carolina, "there is a presumption of at-will employment']. After careful review of the allegations of the Complaint, the undersigned concludes that Plaintiff has failed to plead sufficient factual allegations to state a plausible claim that she had an employment contract with the Defendant.

Plaintiff does not assert that she had an actual employment contract with the Defendant. Rather, she contends that the Defendant's employee handbook contained sufficient "mandatory" language to make its terms an enforceable "contract". Cf. Grant v. Mount Vernon Mills, Ins., 634 S.E. 2d 15, 20 (S.C.Ct.App. 2006)[Employer can alter an employee's at-will status through mandatory language in a handbook]. Plaintiff alleges that the Defendant's employee handbook "uses mandatory language creating a contractual agreement", and did not contain a disclaimer that met the requirements of S.C.Code Ann. § 41-1-10. [13] Plaintiff also alleges that the Defendant "entered into a contract" whereby the Defendant employed her to work for "an indefinite term". Finally, Plaintiff cites specific language from the handbook setting forth various rules and regulations of the Defendant, such as appropriate clothing for employees and the Defendant's policy on absences and comp time, etc., as well as language setting forth the Defendant's anti-discrimination policy, which Plaintiff alleges constitutes mandatory and enforceable contractual terms of employment. Plaintiff then alleges in her Third Cause of Action that she was efficient and

---

[13]S.C.Code Ann. § 41-1-10 provides:

It is the public policy of this State that a handbook, personnel manual, policy, procedure, or other document issued by an employer or its agent . . . shall not create an express or implied contract of employment if it is conspicuously disclaimed. For purposes of this section, a disclaimer in a handbook or personnel manual must be in underlined capital letters on the first page of the document and signed by the employee. For all other documents referenced in this section, the disclaimer must be in underlined capital letters on the first page of the document. Whether or not a disclaimer is conspicuous is a question of law.



effective in her work, and that the Defendant breached her contract of employment by discriminating against her due to her nationality, race, and color in violation of the handbook's anti-discrimination requirements. A copy of the employee handbook itself has also been provided to the Court, both as an attachment to Plaintiff's Amended Complaint, and as an exhibit by the Defendant.[14]

These allegations do not set forth a plausible claim that Plaintiff had a contract of employment with the Defendant. First, Plaintiff herself alleges in her Amended Complaint that she was employed by the Defendant for an indefinite term, and an employee employed for an indefinite period of time, rather than for a stated period of time, is presumptively considered an employee at will. Cape v. Greenville School Dist., 618 S.E.2d 881, 883 (S.C. 2005). Further, the employee handbook not only contains a specific disclaimer advising employees that the handbook is not intended to serve as a contract, create enforceable rights on the part of employees, or alter employees' at-will status, but *every page of the handbook* specifically states at the bottom of each page: "THIS IS NOT A CONTRACT FOR EMPLOYMENT". Plaintiff also signed an

---

[14]In addition to factual allegations of the Complaint, the Court may also consider as part of the review of a 12(b) motion any document that is "integral to and explicitly relied on in the complaint." Phillips v. LCI International, Inc., 190 F.3d 609, 618 (4th Cir. 1999); Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004); White v. VNA Homecare, Inc., No. 11-971, 2012 WL 1435432 at * 1 n. 1 (S.D.Ill. Apr. 25, 2012)[Since the handbook is a document referenced in plaintiff's complaint and is central to her claim, the court can consider it on Defendant's 12(b)(6) motion to dismiss]; McClurkin v. Champion Laboratories, Inc., No. 11-2401, 2011 WL 5402970 at * 2 (D.S.C. Nov. 8, 2011)[Attachment by Defendant of employee handbook did not convert motion to dismiss to a summary judgment motion where Plaintiff referred to employee handbook in her complaint]; cf. Smith v. McAlister-Smith Funeral Home, Inc., No. 11-3281, 2012 WL 4378185 at * 3 (D.S.C. Sept. 25, 2012)[Where the court found that it could not consider the employee handbook that Plaintiff attached to memorandum in opposition to motion to dismiss, his objection to the Report and Recommendation, and his improperly filed amended complaint, when Plaintiff had neither attached or referenced the employee handbook in his operative complaint.].



acknowledgment of the disclaimer.  See Court Docket No. 7-3, p. 30.

  While Plaintiff alleges (and a review of the handbook itself confirms) that the disclaimer was [arguably] not in compliance with § 41-1-10 because it was not on the first page of the handbook (it followed a "welcome" page and the table of contents), even assuming the allegation of the Complaint that the handbook did not contain a disclaimer meeting the requirements of this statute to be true for purposes of Defendant's motion, this fact does not establish a plausible claim that a contract of employment existed.  While a clear compliance with the terms of the state disclosure statute would obviously be important, it is not required (and certainly does not establish the existence of a contract) if the employee handbook at issue otherwise does not contain mandatory language sufficient to alter the presumption in South Carolina of an at-will employee relationship.  Cf. Grant, 634 S.E.2d at 20; Westmoreland v. AB Beverage Co., Inc., No. 05-3475, 2007 WL 274950 at * 13 (D.S.C. Sept. 20, 2007).

  Plaintiff has failed to allege in her complaint language from the employee handbook sufficient to establish a plausible claim that her at-will employment relationship was altered by any such language.  See Dickson, 309 F.3d at 213 [Plaintiff has burden of alleging facts sufficient to state all the elements of a claim].  Rather, Plaintiff simply alleges that the employee handbook "uses mandatory language" and then cites selected passages from the handbook relating to certain workplace rules and the Defendant's anti-discrimination policy.  Indeed, Plaintiff's allegation is that the Defendant breached her contract of employment by breaching the allegedly "mandatory" language of its anti-discrimination policy by discriminating against her due to her nationality, race and color.  However, the language cited by the Plaintiff in her Amended Complaint is typical of anti-discrimination language found in most employee handbooks, and has routinely been held by courts



not to, by itself, constitute a contract.  Cf. Ford v. Musashi S.C., Inc., No. 07-3734, 2008 WL 4414385 (D.S.C. Sept. 23, 2008), adopting in part and denying in part, 2008 WL 4414497, at * 3 (D.S.C. July 11, 2008)["[U]nder South Carolina law where an employee handbook provides a general policy statement of nondiscrimination such a 'provision does not constitute a promise altering the at-will employment relationship . . .'"]; Fyall v. ATC/Ancom of South Carolina, No. 04-23086, 2005 WL 2656962, at * 4 (D.S.C. Oct. 18, 2005) [same]; Hessenthaler v. Tri-County Sister Help, Inc., 616 S.E.2d 694, 698 (S.C. 2005), citing  McKenzie v. Lunds, Inc., 63 F.Supp.2d 986, 1003 (D.Minn. 1999) and Cherella v. Phoenix Technologies, Ltd., 586 N.E.2d 29, 31 (Mass. 1992); King v. Marriott Int'l., Inc., 520 F.Supp.2d 748, 756 (D.S.C. 2007)[Finding that the Defendant's promise that "there will be no discrimination or recrimination against an employee who asserts a complaint against [the defendant] does not create an expectation that employment is guaranteed or that a particular process must be complied with before an employee is terminated"] (internal quotations omitted); Frasier v. Verizon Wireless, C.A., No. 08-356, 2008 WL 724037, at * 2 (D.S.C. Mar. 17, 2008).

Rather, to establish that she had a "contract" of employment with the Defendant, Plaintiff needs to show that she and the Defendant entered into mandatory and binding terms for her employment such as a definite term of employment, buyout provisions, right to severance pay, and other such indices of a contract of employment.  Cf. Wadford v. Hartford Fire Ins. Co., No. 87-2872, 1988 WL 492127 at *5 (D.S.C. 1988) ["A review of the relevant authorities... reveals that a policy or representation must limit the duration of employment or the employer's right to terminate employment in order to alter at-will status.  Other terms and conditions of employment, including pay, benefits, job duties, or location of performance may be changed prospectively by either party

22



without violating an employment contract with an indefinite term."].  The undersigned has both reviewed the handbook language cited by Plaintiff in her Amended Complaint as well as undertaken an independent review of the employee handbook itself (provided to the Court as an exhibit), and does not find any language sufficient to establish a plausible claim that Plaintiff had a "contract" of employment by virtue of this handbook.  Cf. Small v. Springs Industries, Inc., 357 S.E.2d 452, 455 (S.C. 1987)[only policy drafted in sufficiently mandatory terms may serve to alter at-will employment status]; Grant, 634 S.E.2d at 21-22; Storms v. Goodyear Tire & Rubber Co., 775 F.Supp. 862, 867 (D.S.C. 1991) [noting that language cited by the employee was "not couched in mandatory terms and [did] not contain language that specifically [limited] the employer's right to demote or terminate [the Plaintiff] without cause"]; Horton v. Darby Electric Co., Inc., 599 S.E.2d 456, 460-461 (S.C. 2004) [Manual containing progressive disciplinary procedure did not alter employee's at-will status]; see also Frey, 44 F.3d at 671 ["Complaint must contain facts which state a claim as a matter of law and must not be conclusory"].

Therefore, the Defendant is entitled to dismissal of this cause of action.  Amazon v. PK Management, LLC, 2011 WL 1100169, at * 6 (D.S.C. Mar. 23, 2011); cf. Williams v. Intier Automotive Interiors of America, Inc., No. 09-1144, 2010 WL 5811848 (D.S.C. Nov. 5 2010); see also Harper, 423 F.Supp. at 196 ["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"]; Perrine, 2011 WL 3563110, at * 2 [In order to survive a Rule 12 motion to dismiss on a claim for breach of a contract of employment, a Plaintiff must "plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship"]; Prescott, 516 S.E.2d at 927, n. 8 [In South Carolina, "there is a presumption of at-will employment"].

23



## **Conclusion**

Based on the foregoing, it is recommended that the Defendant's motion to dismiss Plaintiff's retaliation claim under Title VII and § 1981 as set forth in her First and Second Causes of Action be **denied** at this time. However, with respect to all other claims asserted in the Amended Complaint (including not just Plaintiff's Third Cause of Action for breach of contract, but also Plaintiff's disparate treatment and hostile work environment claims set forth in her First and Second Causes of Action, as well as any possible claims Plaintiff may have intended to assert under SCHAL, 42 U.S.C. § 1983, or the "Equal Employment Opportunity Act"), it is recommended that the Defendant's motion be **granted**, and that those claims be **dismissed** for the reasons stated.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

October 6, 2014
Charleston, South Carolina

24



**Notice of Right to File Objections to Report and Recommendation**

  The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

  Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

  **Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

25
